## McCALL BROS. v. FARLEY & SKINNER *et al.*

No. 2838. Opinion Filed September 23, 1913.

(135 Pac. 339.)

1. **TRIAL—Demurrer to Evidence.** Where there is any evidence introduced at the trial of a cause reasonably tending to establish the allegations of plaintiff's petition, it is error for the court to sustain a demurrer to such evidence, and render judgment in favor of the defendant.

2. **SAME—Action on Rental Contract.** Where the parties to a written contract have treated it as either ambiguous in its meaning or incomplete, and parol evidence is introduced without objection to explain the terms employed, or supply the part of the contract not incorporated in the written contract, and such evidence fairly tends to establish the allegations of the plaintiff's petition, it is reversible error to sustain a demurrer to plaintiff's testimony.

(Syllabus by Sharp, C.)

*Error from District Court, Washington County;*
*R. H. Hudson, Judge.*

McCall Bros. v. Farley & Skinner et al.

Action by McCall Brothers, copartners, against Farley & Skinner, copartners, and another. From a judgment sustaining a demurrer to plaintiff's evidence, plaintiff brings error. Reversed and remanded.

*George & Campbell,* for plaintiff in error.

*J. R. Charlton,* for defendants in error.

Opinion by SHARP, C. The rental contract, out of which this controversy originated, is as follows:

"Contract, made this 11th day of November, 1909, by and between T. J. Ellis, Jr., of Ochelata, Okla., party of the first part, and McCall Bros., of Vera, Okla., party of the second part, witnesseth: That the said first party agrees to furnish the said second party eighteen hundred acres of pasture in sections 26, 27, 34, 28, 32, 33, township 25, range 13. The said second party is to furnish five hundred head of cattle to be pastured on said land and agrees to pay '$2.00 per head for the pasturing of the same. The said sum of money to paid said first party for the pasturing of five hundred head of cattle is to be $1,000.00, payable as follows: $100.00 receipt of which is hereby acknowledged; $400.00 Jan. 1st, 1910; $250.00 July 1st, 1910; and $250.00 July 15th, 1910. The said second party is to look after his own cattle, and take care of the same while in pasture. The said first party is to fence the said land with post one rod apart and three wire, and deliver the said pasture to the said second party March 1st, 1910. The said second party is to have and hold the same during the grazing season of 1910, or until Dec. 1st, 1910. [Signed] T. J. Ellis, Jr. McCall Bros., by Ralph McCall. Subscribed and sworn to before me this 11th day of November, 1910. Fred P. Spraul, Notary Public. My Com. Expires Dec. 19, 1911."

In pursuance of the terms thereof, plaintiff placed in the leased pasture during the spring of 1910, 500 head of cattle. Becoming fat, these cattle were shipped out and put on the market during the months of June and July following, when defendant Ellis, released the pasture to the defendants Farley & Skinner, claiming that plaintiff had leased the land for the purpose of grazing 500 head of cattle, and that, said cattle having been removed from the pasture, plaintiff had thereby vacated it, and surrendered to the defendant Ellis the right of possession

thereto for the remainder of the grazing season. On the part of plaintiff it was contended that the lease did not terminate until at the end of the grazing season of said year, or until December 1, 1910, hence that plaintiff had the right to the use of said pasture for other cattle during the unexpired term.

Considering the contract of lease as ambiguous, or at least incomplete, the plaintiff in the trial below introduced parol testimony for the purpose of showing the true meaning and agreement of the parties respecting the terms of the lease. This testimony, save as to one question asked, was introduced without objection. Counsel for defendants in error, in his brief filed in this court, admits that said lease is ambiguous, and was so considered by the parties at the trial. Counsel says:

"But, in view of the fact that both parties considered the contract ambiguous because of this clause ('or until Dec. 1st, 1910'), the court permitted testimony to be introduced by the plaintiff explaining the real meaning of the parties at the time they entered into the contract."

We shall consider, therefore, as we believe counsel rightfully did, that the contract is ambiguous in its meaning, as well as incomplete, and that therefore parol evidence was admissible to show the other terms of the agreement, as far as consistent with the terms in writing. Both the plaintiff in its petition, and the defendant Ellis in his answer, set up facts connected with said rental contracts, not included within, or covered by, the terms of the contract. Plaintiff contends that it was to have the use of the pasture until the end of the grazing season of 1910, or until the 1st of December of said year, while the defendant Ellis contends that plaintiff was to have the use of the pasture for 500 certain head of cattle, and, if necessary, until the 1st day of December, 1910, but that, if said particular cattle became ready for the market, and were shipped out prior to the time last mentioned, then the right to possession of said pasture for the remainder of said year should revert immediately to the said lessor.

The parol testimony introduced without objection, in part, is as follows:

"Q. This contract reads further in part: That said second party is to have and hold the same during the grazing season of 1910, or until December 1st, 1910; now, I will ask you to explain what was meant by that term? A. It was meant by that that we were to have control of the pasture up to December 1st, 1910. We expected to pay for the pasture, if we only put a small number of cattle in. Q. Was there any conversation between you with reference to the number of cattle that you were to be allowed to pasture? A. Yes, sir; he did not want us to put over 500 head of cattle in the pasture. Q. Was there any conversation with reference to the price per head that you were to pay for these cattle? A. He said $2 per head, and afterwards he said he only wanted $1,000 for the pasture. We might have the pasture for our cattle. Q. At that time it was understood that you were not to put in over 500 head of cattle at any one time? A. Yes, sir. Q. Whatever number you put in you were to pay $1,000 for the pasture? A. Yes, sir."

Being further asked concerning their conversation prior to the making of the contract, plaintiff testified:

"Q. What was that conversation? A. We told him at that time that we would perhaps want to take these cattle out and put more cattle in the field before the year was out. We expected to take these cattle out of there during the summer. Q. You told Mr. Ellis that? A. Yes, sir. Q. What did he say? A. He said we should have the right to the pasture until the 1st of December. Q. What was the conversation or understanding between you and Mr. Ellis at the time of the making of this contract as to whether or not the grazing season mentioned in this contract was as long as you kept the first 500 head that you put in the pasture, or that it meant until December 1st, 1910? A. We were to have it until December 1st, 1910. Q. Was that what he told you in that conversation? A. It was to that effect. Q. Were you limited in that conversation at that time to any particular 500 head of cattle? A. We were not limited to any particular bunch of cattle. Q. Was there any conversation about them taking out those cattle, and putting other cattle in? A. There was. Q. What was that? A. We told them we expected to take those cattle out, and that we would perhaps buy another bunch of cattle, and put them in there. Q. Is that why you extended this contract until December 1st? A. Yes, sir. Q. For what length of time did you pay this $1,000? A. From March 1st, 1910, until December 1st, 1910."

Other testimony of Ralph B. McCall, a member of the plaintiff firm, is to the same effect as the foregoing.

From what has been seen, it was obviously error for the court to sustain a demurrer to plaintiff's evidence. Where there is any evidence introduced at the trial of a cause reasonably tending to establish the allegations of plaintiff's petition, it is error for the court to sustain a demurrer to such evidence, and render judgment in favor of the defendants. *Cole v. Missouri, K. & O. Ry. Co.,* 20 Okla. 227, 94 Pac. 540, 15 L. R. A. (N. S.) 268; *St. Louis & S. F. R. Co. v. Jamieson,* 20 Okla. 654, 95 Pac. 417; *Missouri, K. & T. Ry. Co. v. Walker,* 27 Okla. 849, 113 Pac. 907; *Wicker v. Dennis et al.,* 30 Okla. 540, 119 Pac. 1122. The question being one of fact, and there being evidence reasonably tending to support plaintiff's contention, the court should have overruled the defendants' demurrer. It was error necessitating a reversal of the case not to do so.

The judgment of the trial court should be reversed, and the cause remanded for a new trial.

By the Court: It is so ordered.