## CHICAGO, R. I. & P. RY. CO. v. McBEE.

No. 5226.   Opinion Filed November 24, 1914.

Rehearing Denied January 5, 1915.

(145 Pac. 331.)

1. APPEAL AND ERROR—Action—Nature and Form—Change of Contention. "A party is bound, in the appellate court, as to the nature and form of the action, by the theory upon which it was tried." 2 Cyc. 671.

2. EVIDENCE—Judicial Notice—Interstate Commerce—Railroads. It is not a matter of such general knowledge as to dispense with proof that any specific portion of the equipment, or any particular employee, of a railroad is engaged in interstate, rather than intrastate, commerce at any precise time or place.

3. MASTER AND SERVANT—Injury to Servant—Federal Employers' Liability Act—Burden of Proof. While the state court will recognize that the federal Employers' Liability Act., Act April 22, 1908, C. 149, 35 Stat. 65 [U. S. Comp. St. 1913, Secs. 8657-8665]) is supreme with respect to the responsibility of railroads engaged in interstate commerce to their employees injured or killed in such commerce, yet, before a state court is called upon to administer the federal law in any case, the party desiring to avail himself of any right, privilege, or immunity thereunder must, by appropriate pleading, or by evidence, bring to the attention of the trial court the fact that his cause of action or his defense falls within its terms.

(Syllabus by the Court.)

*Error from District Court, Marshall County;*

*Summers Hardy, Judge.*

Action by Edith McBee, administratrix of the estate of John M. McBee, against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*C. O. Blake, R. J. Roberts, W. H. Moore, J. G. Gamble,* and *K. W. Shartel,* for plaintiff in error.

*Ledbetter, Stuart & Bell,* for defendant in error.

BLEAKMORE, J. This case presents error from the district court of Marshall county. The parties will be referred to herein as they appeared in the trial court.

On the 10th of September, 1912, Edith McBee, administratrix of the estate of John M. McBee, filed her petition in the district court of Marshall county against the defendant for damages by reason of the death of the intestate, alleged to have occurred on the 18th day of January, 1912, as the result of injuries received by him on the 31st day of December, 1911, by reason of the explosion of a boiler of an engine which he was at the time engaged in caring for as watchman at Anadarko. It is alleged that, while said John M. McBee was upon the engine of defendant engaged in the performance of his duties and as an engine watchman said engine and boiler exploded, and the crown sheet thereof gave way, resulting in his injury and death; that the crown sheet of the engine was made of iron or steel, and was so old, worn, and badly burned that it failed to withstand the heat and pressure of the steam, and so gave way, permitting the steam and hot water to escape into the fire box; that said engine and boiler were old, antiquated, dilapidated, and out of repair, and the boiler was badly leaking at the time of the injury, so that the water leaked into the fire box, and, in order to keep the engine alive, required a much

Form 7

hotter fire to overcome the effect of said leakage, and on that account that parts of the crown sheet and bolts and metal holding the same became overheated and burned and less able to withstand the steam pressure, and the said crown sheet gave way under the steam pressure, and thereby scalded, burned, and injured intestate, resulting in his death; that defendant had failed to wash out the boiler of the engine for several weeks before the accident, as it was its duty to do, and on account of sediment and dirt deposited from the water accumulated on the crown sheet between the water in the boiler and said crown sheet, that the fire from the fire box underneath so heated the said crown sheet, the bolts and metal connected therewith, that the same did not have the power to withstand the steam pressure, and, as a result, said crown sheet and said bolts and metal gave way. It is further alleged that John M. McBee was 24 years of age, in good health, sound in mind and members, earning and able to earn $65 per month; that at the time of his injury he was inexperienced in the railroad business and knew little about the mechanism of an engine or boiler or operating same.

Defendant answered by general denial. The case was tried to a jury, and resulted in a verdict for the plaintiff in the sum of $15,000.

Under the sole assignment of error—that the court erred in overruling the motion for a new trial—defendant urges: (1) Error of the court in refusing to instruct the jury to return a verdict for defendant, in that no negligence was proved, and that the federal Employers' Liability Act of 1908 applies; (2) error in the instructions given and in the refusal to instruct the jury as requested by defendant; (3) error in the admission of incompetent evidence; and (4) excessive damages.

The evidence developed the fact that the engine upon which plaintiff was engaged as a watchman was used in hauling a passenger train from Enid to Waurika, Okla., carrying passengers received at Enid to local points, or received at local points

and carried to Waurika; that it was what is known as an oil burner, using oil for fuel; that it arrived at Anadarko about 6 o'clock in the evening on the day the injury occurred, and was left there because of an insufficient supply of fuel oil to take it to the end of the run at Waurika; that its tanks were filled with oil and water, and the engine run upon the side track and turned over to the intestate, John M. McBee, to be watched and cared for during the night. The evidence shows that on the night of the accident the engine was leaking badly, and that it had leaked some four or five months before. The testimony further shows, by defendant's witnesses, that the engine so leaking was in a dangerous condition. The testimony shows that the water used in this engine, both at Enid and Waurika, was, perhaps, not of the best; that it was the custom of the defendant company to wash out its engines once a week; that at the time of the washing out of an engine a card was left in the cab showing the date that same had been washed. There was found in the cab of the engine in question, after the explosion, a card upon which appared: "Last date boiler washed, 11—17—11." However, employees of defendant testified that the engine had been washed out a number of times between the 17th of November and the time of the accident, the night of December 31st, and the last washing occurred only a few days before the accident. It was also shown that the engine in question was built in 1887; that the life of a crown sheet is of an indefinite period, but that the crown sheet of an oil burning engine lasts from four to six years, and that if dirt and sediment is permitted to accumulate upon the crown sheet with a hot fire underneath that the same is likely to become burned and weakened. It was also shown that the water at Waurika was muddy. There was evidence showing that said engine had been repaired in June previous to the injury, but there was none as to when, if ever, the crown sheet had been renewed.

The theory of the defendant was that the deceased had negligently permitted the water in the boiler to become so low

that it did not cover the crown sheet, and that the intense heat in the fire box so burned and weakened it that it gave way to the steam pressure above; that deceased was not attending to his duties as watchman, but was asleep at the time of the explosion; and there is in the record of the testimony of his brother, an employees of the company, that deceased shortly after the explosion stated that he was asleep and did not know how the accident occurred. There is testimony also tending to show that, if deceased had kept the boiler properly filled with water, the explosion could not have occurred.

While the evidence is conflicting, yet there was sufficient evidence to take the case to the jury.

The rule established in this jurisdiction is that:

"This court will not disturb the finding of fact by a jury or by a court sitting in the place of a jury, if there is any evidence reasonably tending to establish the allegations of the petition."

*Wicker v. Dennis,* 30 Okla. 540, 119 Pac. 1122; *Yukon Mills & Grain Co. v. Imperial Roller Mills Co.,* 34 Okla. 817, 127 Pac. 422; *McCall v. Farley & Skinner,* 39 Okla. 389, 135 Pac. 339.

In the trial court both the plaintiff and defendant treated the case as one arising under the state statute; yet upon appeal it is here contended by defendant that the action is based upon and controlled by the federal Employers' Liability Act of 1908. Nowhere in the petition is it alleged that the injuries which caused the death of plaintiff's intestate were received which he was engaged in interstate traffic, nor did the defendant in its answer or upon the trial attempt to invoke any right, privilege, or immunity which it is claimed it might have asserted under the federal act. Defendant now urges that it is an interstate carrier and it, together with the deceased, was engaged in interstate commerce when the injury occurred; that, although this

matter was not, by the pleadings or the evidence, brought to the attention of the trial court, yet this court is bound to take judicial notice of the fact that the defendant, owning and operating a great system of railway extending through many states and into Oklahoma was necessarily engaged in interstate commerce, and its engine which was being watched by the deceased, McBee, and McBee himself, were so engaged at the time the injuries resulting in his death were received. It is a rule of universal application that, where both parties to a cause act upon a particular theory of the cause of action, they will not be permitted to depart therefrom when the case is brought to an appellate court for review.

In 2 Cyc. 670, the rule is laid down as follows:

"One of the most important results of the rule that questions which are not raised in the court below cannot be reviewed in the appellate court is that a party cannot, when a cause is brought up for appellate review, assume an attitude inconsistent with that taken by him at the trial, but that such party is restricted to the theory on which the cause was presented or defended in the court below. Thus, where both parties act upon a particular theory of the cause of action, they will not be permitted to depart therefrom when the case is brought up for appellate review. As to the law which governs: When a case is tried by both parties upon the theory that the law of the forum governs, a party cannot, on appeal, take the position that the laws of another state should have been applied."

In *Harris v. First National Bank,* 21 Okla. 189, 95 Pac. 781, Mr. Chief Justice Kane, speaking for this court, said:

"The appellant bases his right to retention of the property on his absolute ownership of it prior to the execution and delivery of the mortgage to the bank, and when that claim failed he is not entitled to have his theory of verbal mortgage considered for the first time in the Supreme Court."

In *Checotah et al. v. Hardridge et al.,* 31 Okla. 472, 123 Pac. 846, it was said:

"The case, however, seems to have been tried in the lower court upon the theory that the Creek law applied to the entire devolution, and, if so, the parties will not be permitted to change front in this court, and take a new hold on another theory. This has been the uniform holding of this court. *Harris v. First National Bank of Bokchito,* 21 Okla. 189, 95 Pac. 781; *Queen Insurance Co. v. Cotney et al.,* 25 Okla. 125, 105 Pac. 651; *Wattenbarger v. Hall,* 26 Okla. 815, 110 Pac. 911; *St. Louis & S. F. R. Co. v. Key,* 28 Okla. 769, 115 Pac. 875; *Perry Water, Light & Ice Co. v. City of Perry,* 29 Okla. 593, 120 Pac. 582 [39 L. R. A. (N. S.) 72]."

The rule seems to be well settled that a defendant, as in the instant case, will not be permitted for the first time in an appellate court to invoke the protection of a federal statute. *Midland Valley Co. v. Lemoyne,* 104 Ark. 327, 148 S. W. 654; *C., R. I. & P. Ry. Co. v. Rogers* (Tex. Civ. App.) 150 S. W. 281. See Volume 1 Encyc. U. S. Supreme Court Reports, pp. 620, 621. Numerous cases are there cited, all to the same effect.

While this court may properly, in certain cases, take judicial cognizance of the fact that any one of the many great trunk lines of railway extending through the various states is engaged in interstate commerce, yet the fact is equally as notorious and as much the subject of judicial notice that every such railway is also engaged in intrastate traffic; and clearly it is not a matter of such general knowledge as to dispense with proof that any specific portion of the equipment, or any particular employee of such railway is engaged in interstate, rather than intrastate, commerce at any precise time or place. The only evidence in this case as to the character of commerce in which defendant and deceased were engagd is that the engine which was being watched by, and exploded and caused the death of, the said John M. McBee was used in hauling a passenger train between points in this state.

While state as well as federal courts are presumed to be cognizant of the Employers' Liability Act, and to recognize that

such law is supreme with respect to the responsibility of railroads engaged in interstate commerce to their employees injured or killed in such commerce, yet, before a state court is called upon to administer the federal law in any case, the party desiring to avail himself of any right, privilege, or immunity thereunder must, by appropriate pleadings, or by evidence, bring to the attention of the court the fact that his cause of action or his defense falls within its terms. Obviously, the federal Employers' Liability Act supersedes all state laws and regulations as to causes of action falling within its terms; yet in an action where, as in the instant case, neither the pleadings nor the evidence bring the cause within the purview of that act, and the trial in the court below proceeded upon the theory that the state statute governed, this court is precluded from holding that the federal statute should have controlled; for, necessarily, in such case the state law alone could be applied.

Defendant complains that there was prejudicial error in permitting a witness to describe the construction of the fire box of an engine of the character used by railroads generally; he having stated that there was a similarity in the construction of all engines used by the various roads. With this contention we cannot agree.

It is further urged that the court erred in refusing to instruct the jury, as requested by defendant, upon the subject of contributory negligence and assumption of risk. An examination of the instructions discloses that the propositions, so far as applicable to the instant case, were substantially covered by the instructions given, and the questions were fairly submitted to the jury.

It is also contended that the instructions of the court were erroneous, because based upon an assumed state of facts contradictory to the evidence. There is no merit in this contention. The instructions of the court fairly and fully covered the alle-

gations of the pleadings substantiated by the proof, and all the propositions of law applicable to the issues presented were adequately embraced by the charge.

It is also urged in this connection that there was error in permitting certain hypothetical questions propounded to an expert witness to be answered. because there was not contained therein a full summary of the testimony introduced. It has been held by this court that a hypothetical question sufficiently comprehensive to cover the essential facts testified to is not improper, for the reason that it does not embrace all the facts in the record. *C., R. I. & G. Ry. Co. v. Bentley,* 43 Okla. 469, 143 Pac. 179.

It is contended also that the damages awarded were excessive. The evidence discloses the fact that the deceased was a man 24 years of age, mentally and physically sound, earning $65 a month. There is nothing in the evidence indicative of the claim that the verdict of the jury was influenced by passion or prejudice, and, in our opinion, a judgment in the sum of $15,000 in a case like the one before us is not excessive.

It follows, from the foregoing, that the judgment of the trial court should be affirmed; and it is so ordered.

LOOFBOURROW and RIDDLE, JJ., concur. KANE, C. J., and TURNER, J., absent and not participating.